**SARA M. PELOQUIN**
California State Bar No. 254945
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: sara_peloquin@fd.org

Attorneys for Mr. Valadez-Martinez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE CATHY A. BENCIVENGO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR1262-IEG |
| Plaintiff, ) | DATE: May 16, 2008 |
| ) | TIME: 10:00 a.m. |
| v. ) | |
| ) | **MR. VALADEZ-MARTINEZ'S RESPONSE** |
| ) | **AND OPPOSITION TO MATERIAL** |
| JOSE MANUEL VALADEZ-MARTINEZ, ) | **WITNESS' MOTION FOR VIDEOTAPED** |
| ) | **DEPOSITIONS** |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**

The following statement of facts and facts further cited in this motion are based primarily on government-provided discovery. Mr. Valadez-Martinez in no way admits the truth of these facts nor their accuracy as cited in these motions. Further, Mr. Valadez-Martinez reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

On March 30, 2008, at approximately 1:15 p.m., Border Patrol Agent Keller saw a group of eight people running north through an agricultural field towards Carr Rd. Agent Keller saw a six of the eight individuals get into a white truck. Border Patrol Agent Joyner followed the truck down Carr Rd. Agent Joyner believes Mr. Valadez-Martinez was the driver of the truck. The truck turned into an agricultural field and stopped. All the occupants of the truck got out and ran from the agents. Mr. Valadez-Martinez was arrested as were five other occupants of the truck. The two people who did not get into the truck earlier were

1  also arrested. Jose Guadalupe Lopez-Guerrero, Jose Cruz Ramirez-Castorena and Rogelio Cervantes-
2  Sanchez, have been detained as material witnesses in connection with Mr. Valadez-Martinez' case.
3        On April 22, 2008, the government charged Mr. Valadez-Martinez by way of indictment with three
4  counts of violating 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II)(transportation of illegal aliens and aiding or
5  abetting).
6        On May 2, 2008, Jonathan Frank, the attorney for all three material witnesses filed a motion for
7  videotaped depositions pursuant to 18 U.S.C. § 3144, alleging that none of the material witnesses are able
8  locate a surety resulting in hardship to the material witnesses and their families. On May 8, 2008, Rogelio
9  Cervantes-Sanchez and Jose Cruz Ramirez-Castorena each bonded out of custody.

**II.**

**THE MOTION FOR THE MATERIAL WITNESS' DEPOSITION SHOULD BE
DENIED BECAUSE THERE IS NO SHOWING OF UNAVAILABILITY
OF THE WITNESS AND THE MOTION IS MADE PREMATURELY**

13  Title 18, United States Code § 3144 governs the detention of individuals who may give testimony
14  material to a criminal proceeding. This section provides that where the witness is not able to meet the
15  conditions of the bond set by the court and is detained, the court may order the deposition of the witness
16  where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to
17  prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witness has moved for
18  videotaped depositions pursuant to 18 U.S.C. § 3144. Although a deposition may secure the material witness'
19  testimony, this Court should order the material witness' continued detention in order to protect Mr. Valadez-
20  Martinez's constitutional rights. In the alternative, this Court should modify the conditions of release so that
21  the material witness can remain in the United States until this case is resolved.
22        Depositions in criminal cases are generally disfavored for several reasons, including the threat to the
23  defendant's Sixth Amendment confrontation rights. United States v. Drogoul, 1 F.3d 1546, 1551-52
24  (11th Cir. 1993). All defendants have the right to confront witnesses against them. See U.S. CONST.
25  Amend. VI. The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), reaffirmed this
26  principle — developed at common law and incorporated into the Confrontation Clause of the
27  Sixth Amendment by the Framers — that testimonial statements may not be admitted against a defendant
28  where the defendant has not had the opportunity to cross-examine the declarant. This is true even where the

1  statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of
2  trustworthiness." Id. at 60.

3  In Crawford, the Supreme Court noted that the Sixth Amendment was drafted in order to protect
4  against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against
5  the accused." Id. at 50. Such *ex parte* examinations implicate Sixth Amendment concerns because they are
6  "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to "witnesses
7  against the accused - in other words, those who bear testimony." Id. at 51 (internal quotations omitted).
8  Although the Supreme Court declined to define "testimonial" evidence, they noted that an "accuser who
9  makes a formal statement to government officers bears testimony in a sense that a person who makes a casual
10 remark to an acquaintance does not." Id.  The Confrontation Clause does not permit such testimonial
11 statements to be admitted at trial against an accused without the constitutionally prescribed method of
12 determining reliability, *i.e.*, confrontation. Id. at 61-65. In other words, "[w]here testimonial evidence is at
13 issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for
14 cross-examination." Id. at 68.

15 Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no
16 opportunity to confront the witness, there are some situations in which depositions may nonetheless be taken.
17 In these situations, the burden is on the moving party to establish *exceptional circumstances* justifying the
18 taking of depositions. Drogoul, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo, 929 F.2d 1507,
19 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of certain "critical
20 factors," such as whether (1) the witness is unavailable to testify at trial; (2) injustice will result because
21 testimony material to the nonmoving party's case will be absent; and (3) countervailing factors render taking
22 the deposition unjust to the nonmoving party. Id. at 1552.

23 When considering this issue, this Court must balance the interests of the government and the accused,
24 as well as the interests of the material witness. Although the material witness may have a liberty interest at
25 stake, that interest is outweighed by Mr. Valadez-Martinez's weighty constitutional rights of confrontation
26 and due process of law. The Confrontation Clause serves several purposes: "(1) ensuring that witnesses will
27 testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe
28 the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985). It allows the

1  accused to test the recollection and the conscience of a witness through cross-examination and allows the jury
2  to observe the process of cross-examination and make an assessment of the witness' credibility. Maryland
3  v. Craig, 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64 (1980).  In a case such as the one,
4  where the material witnesses have received the benefit of the Government refraining from pressing criminal
5  charges in return for their testimony against the accused,[1] it is important that the jury see the reaction and
6  demeanor of the material witnesses when they are confronted with questions that will bring out such facts
7  in order for the jury to decide whether to believe her statements and/or how much credit to give to their
8  testimony.  The jury's ability to make such an assessment would be compromised by a videotaped deposition
9  because the tape may not preserve subtle reactions of the witnesses under cross-examination that may favor
10 the accused.

11    Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal
12 Procedure 15(a) which states that a material witness' deposition may be taken only upon a showing of
13 "exceptional circumstances."  United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998).

14    The material witnesses here, however, have failed to demonstrate any "exceptional circumstances"
15 justifying the impingement of Mr. Valadez-Martinez's Sixth Amendment rights. Rather, the hardship alleged
16 by Jose Guadalupe Lopez-Guerrera is that he is the sole means of support for his wife and three children."
17 See Lopez Decl. at 2. Two of the material witnesses children have reached the age of majority. The material
18 witness gives no reason why his children aged twenty and eighteen cannot support themselves and their
19 mother and younger sibling. There is no mention of other family members that may or may not be able to help
20 his immediate family financially.  Furthermore, Jose Guadalupe Lopez-Gonzalez was more than willing to
21 leave his family members behind to come to the United States illegally with *no* guarantee that he would find
22 a job that would allow her to send any money back to Mexico to support his family.

23    With respect to Jose Cruz Ramirez-Castaneda and Rogelio Cervantes-Sanchez, they have each found
24 sureties who have posted their bonds.  They can  no longer claim hardship due to their custodial status.

---

[1] This Court should be mindful of the fact that the only reason the Government has not charged the material witnesses with a crime is that the Government seeks to introduce their testimony against the accused. The material witnesses could have been charged with illegal entry under 8 U.S.C. § 1325, which carries a maximum sentence of six (6) months imprisonment. Needless to say, the Government would not concern itself with the material witnesses' liberty interests had it, in fact, charged them with this offense.

Neither of these material witnesses claimed to be the sole means of support for their family members. Due to their release from custody, Mr. Valadez-Martinez' Sixth Amendment confrontation rights clearly trump the material witnesses' claims of hardship or exceptional circumstances.

The material witnesses argued that under Torres-Ruiz v. United States District Court, 120 F.3d 933, 935 (9th Cir. 1997), the fact that their continued incarceration constitutes an economic hardship for them and their families is sufficient to satisfy their burden of proof under Rule 15(a). Almost any period of incarceration, by definition, will result in some sort of financial hardship to that individual and her family. Economic hardship alone cannot constitute extraordinary circumstances. Rather, as the Court in Torres-Ruiz made clear, extraordinary circumstances require something more: in that case, "tremendous hardship." 120 F.3d at 936. In particular, the material witnesses in Torres-Ruiz were both "the sole support for their respective families in Mexico." Id. at 935 (emphasis added).

In the instant case, however, the material witnesses cannot establish such tremendous hardship sufficient to overcome Mr. Valadez-Martinez' confrontation rights. JoseCruz Ramirez-Castorena and Rogelio Cervantes-Sanchez have each been released on bond. Jose Guadalupe Lopez-Guerrero's declaration simply sums up the regrettable but usual difficulties one might expect of being incarcerated. Obviously the material witnesses in this case, no less than Mr. Valadez-Martinez, would want to be free to help supplement his family with economic support, but absent tremendous facts, hardship alone is not sufficient to establish extraordinary circumstances warranting deposition testimony.

Furthermore, this Court should consider the unique circumstances faced by the Ninth Circuit in Torres-Ruiz. Unlike this case, in Torres-Ruiz the material witness' motion for videotape deposition was unopposed by the defendant. 120 F.3d at 934-35. Perhaps more importantly, in Torres-Ruiz, the defendant entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case was already near disposition when the motion was made. Id. at 936-37. As of now, however, the instant case stands in a much different procedural posture.

Mr. Valadez-Martinez has pled not guilty to all counts of the Indictment. This motion is to be heard before the substantive motion hearing date currently scheduled before Judge Gonzalez on June 2, 2008. The defense has yet to conduct extensive investigation in this case. In short, it is very early in the case. To require Mr. Valadez-Martinez to cross-examine the material witness at the current juncture of the proceedings would

severely prejudice her future trial rights. Any cross examination of the material witness at this point would be at best meaningless, and at worst ineffective and potentially harmful to Mr. Valadez-Martinez and his defense.

Finally, if the Court determines that the issue must be addressed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witness so that her continued detention would be unnecessary. Conditions of release for material witnesses is governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer **shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witness in this case is a motion to modify the terms of her release, not for the draconian remedy of immediately ordering a videotaped deposition and deporting the material witness to Mexico, especially not at this very early stage of the proceedings.

Jose Guadalupe Lopez-Guerrero here alleges that he cannot secure a personal surety able to post an appearance bond. Nowhere, however, does the material witness state his unwillingness to remain in the United States during the pendency of this case. This Court can, and should, modify the material witness' bonds to allow him to re-gain his freedom, while at the same time safeguarding Mr. Valadez-Martinez's Sixth Amendment rights. The material witness has no incentive not to come back to court to testify. The material witness is not being charged with a crime. The material witness has no incentive to flee the country. Indeed, if the statement of facts in support of the complaint in this case is to be believed, this material witness was prepared to pay money to be smuggled illegally into the United States by friends and family members in the United States. Therefore, he obviously wants to remain in this country, fully within the subpoena power of the Court.

///
///
///

## III.

## **CONCLUSION**

For the reasons stated above, Mr. Valadez-Martinez respectfully requests that this Court deny the material witness' motion for a videotaped deposition.

Respectfully submitted,

DATED: May 13, 2008
/s/ Sara M. Peloquin
**SARA M. PELOQUIN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Valadez-Martinez